IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARGENTO SC BY SICURA, INC., )<br>)<br>)<br>*Plaintiff*, )<br>)<br>-vs- )<br>)<br>TURTLE WAX, INC. AND )<br>GLOBAL ICONS, LLC, )<br>)<br>*Defendants*. ) | CASE NO.: 22-CV-112<br><br>*(JURY TRIAL DEMANDED)* |

## COMPLAINT

Plaintiff Argento SC by Sicura, Inc. ("Argento" or "Plaintiff"), by its attorneys Oved & Oved LLP and Costello, Ginex & Wideikis, P.C., complaining of the Defendants Turtle Wax, Inc. ("Turtle Wax") and Global Icons, LLC ("Global") (collectively, "Defendants"), upon information and belief, alleges as follows:

## PARTIES

1. Plaintiff Argento is a New York corporation with a principal place of business or "nerve center" at 1407 Broadway, Suite 2201, New York, NY 10018.

2. Defendant Turtle Wax is an Illinois corporation with a principal place of business or "nerve center" at 2250 West Pinehurst Blvd., Suite 150, Addison, IL 60101.

3. Defendant Global is a California limited liability company with a principal place of business "nerve center" at 12400 Wilshire Blvd., Suite 1400, Los Angeles, CA 90025. On information and belief, none of Global's partners or members are residents of New York.

## JURISDICTION & VENUE

4. This is an action for breach of contract (including breach of the covenant of good faith and fair dealing), tortious interference with a contract, and negligence amongst entities from New York, Illinois, and California concerning more than $75,000 and thus this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this district pursuant to the parties' agreement and 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

**A.** **The Parties**

5. For nearly two decades, Argento has been an industry leader in the design, manufacture, distribution, and sale of a variety of consumer goods including, *inter alia*, automotive accessories and pet products. With offices in New York and China, Argento's products are sold to prominent retailers including Nordstrom, Dick's Sporting Goods, Sam's Club, Century 21, and TJ Maxx.

6. Turtle Wax is a well-recognized car care brand that owns several trademarks in connection with car care products and automotive accessories (the "Trademarks").

7. Global is a self-proclaimed global brand licensing agency.

8. Like many companies, Turtle Wax does not design and manufacture all of its products and thus licenses the use of its Trademarks to third parties who design, manufacture, and sell those products for Turtle Tax.

9. At all relevant times, Global was the trademark licensing agent for Turtle Wax's Trademarks.

**B.     The Exclusive License Agreement**

10.     On or about November 6, 2018, Argento and Turtle Wax entered into an exclusive license agreement (the "Exclusive License Agreement") pursuant to which Argento became the exclusive licensee of the Turtle Wax Trademarks for, *inter alia*, car seat covers for pets ("Pet Seat Covers"), hammocks to hold pets in automobiles ("Pet Hammocks"), and automobile pet barriers to keep pets in a certain portion of a vehicle ("Pet Barriers") (collectively, the "Licensed Products"), in certain territories listed on a schedule attached thereto (the "Territories") through June 30, 2022 (§ 1.6) (the "Initial Term"), which Argento had the option to renew for an additional three-year term (§ 8.1).

11.     Pursuant to Article 3 of the Exclusive License Agreement, Turtle Wax also agreed that it would not "grant[] any other licenses for the use of the Trademarks in the Territory," except for one pre-existing license agreement "that allows a certain third-party to manufacture, sell and distribute a [Pet Seat Cover] to the retailer Meijer only through December 31, 2019."

12.     In exchange, Argento agreed to pay Turtle Wax, through Global, certain royalty payments on a quarterly basis and meet certain "performance levers" (§ 4).

13.     The Exclusive License Agreement was subsequently amended in May and July 2019 to, *inter alia*, add new and/or replace certain Licensed Products that are not germane to the instant matter. Both amendments provide that "Except as amended herein, all other terms of the [Exclusive License] Agreement shall remain in full force and effect."

**C.     Defendants Breach the Exclusive License Agreement**

14.     Argento immediately set to work pursuant to the Exclusive License Agreement to design, manufacture, sell, distribute, and promote the Licensed Products.

15. However, in or around April 2019, Argento discovered that Turtle Wax and/or Global breached the Exclusive License Agreement by permitting another entity to manufacture Pet Barriers and Pet Hammocks and sell same at, *inter alia*, Target and Meijer, retailers included in Argento's Exclusive License Agreement (the "Infringing Products").

16. Argento promptly confronted Turtle Wax and Global about the Infringing Products.

17. In response, on or about April 19, 2019, Global assured Argento that none of the Infringing Products at Target and Meijer received final approval by Turtle Wax. In fact, Global represented that Defendants would send a breach letter to the manufacturer of those Infringing Products.

18. On or about May 21, 2019, Global notified Argento that it had investigated the situation further and determined that the Infringing Products had been developed by another of Turtle Wax's licensees (the "Infringing Licensee(s)") as a result of "clear[] human error" and Turtle Wax's admittedly unsophisticated product approval system.

19. Global represented on behalf of Turtle Wax that Defendants were only aware that one of the Infringing Licensee(s) had a preexisting intention to sell a Pet Seat Cover to Meijer—which is why such exculpating language was included in Argento's Exclusive License Agreement—but was unaware that the Infringing Licensee(s) was manufacturing other pet products and also selling to Target.

20. To induce Argento not to terminate the Exclusive License Agreement and seek damages, Global, on behalf of Turtle Wax, assured Argento that: (i) the Infringing Licensee(s) acknowledged and agreed that they cannot produce any additional Infringing Products; (ii) the Infringing Licensee(s) will not offer for sale, market, or ship these Infringing Products to any

additional retailers; and (iii) the Infringing Products would be off of store shelves by the end of 2019 at the latest.

21. To further induce Argento not to terminate the Exclusive License Agreement and seek damages, Global, on behalf of Turtle Wax, also represented that, if the Infringing Licensee(s) designed, manufactured, and/or sold any additional "pet products," they would not be approved by Defendants and if they were marketed, sold, or shipped to any other retailer, Turtle Wax would send a breach letter immediately to the Infringing Licensee(s).

22. On or about May 25, 2019, Global reiterated these assurances again in an email to Argento, stating that no further items related to the "Pet" Trademarks would get through Defendants' approval system.

23. Global also stated on behalf of Turtle Wax that the Infringing Licensee(s) contract expires on December 31, 2020, and that they "do not have the [Pet] items in their contract…IF [*sic*] we renew the Agreement we will be amending that definition of both categories to specifically exclude Pet…Argento will be the only licensee with Pet travel in their agreement."

24. Argento reasonably relied upon Defendants' representations in not declaring the Exclusive License Agreement breached, and not pursuing remedies for the breach at that time.

25. Yet, approximately two years later, Argento discovered that Defendants never cured their breach but, in fact, had doubled down.

26. Indeed, despite Global's representations to Argento on behalf of Turtle Wax promising Argento that no further production of the Infringing Products would be made, the Infringing Products are *still* being sold at Target and online, and that an additional Infringing Products being sold at other retailers such as Target and Sierra (a retailer affiliated with TJ Maxx).

27. On or about June 7, 2021, Argento confronted Defendants about their continuing willful breach of the Exclusive License Agreement.

28. In response, Defendants feigned ignorance of their continued willful breach of the Exclusive License Agreement.

29. Accordingly, on or about June 14, 2021, Argento sent a cease-and-desist letter to Defendants notifying them that Argento is aware of their direct, and patently intentional, breach of the Exclusive License Agreement and demanded:

- confirmation that the Exclusive License Agreement is terminated as a result of Turtle Wax's breach;

- the disgorgement of both Turtle Wax's and the illicit licensee(s)' profits garnered from the Infringing Products;

- the sum of $200,000, representing Argent's then-estimated damages; and

- an accounting of (i) all SKUs of Infringing Products; (ii) the costs to manufacture all Infringing Products; (iii) the quantity of all Infringing Products sold; (iv) which retailers sold the Infringing Products; (v) the amount of revenue garnered from the Infringing Products; and (vi) the quantity of Infringing Products that remain in inventory.

30. Subsequently, Global, as Turtle Wax's agent and brand representative, responded by emphatically rejecting the notion that the Exclusive License Agreement was terminated because it claimed that the willful continued sale of the Infringing Products was not "material enough" to constitute a breach of the Exclusive License Agreement, and refused to disgorge all profits and tender payment of Argento's damages. Instead, the parties began negotiating a settlement on behalf of Turtle Wax.

31. On September 17, 2021, while Argento was awaiting a response to its most recent settlement offer, Turtle Wax reversed course and transmitted a letter to Argento (i) denying that it materially breached the Exclusive License Agreement; (ii) claiming that Global was either not authorized to engage in settlement discussions or that it did so without Turtle Wax's knowledge;

and (iii) claiming that, although it denies its breach, Turtle Wax deemed the Exclusive License Agreement terminated as of June 14, 2021.

32. Though Argento disagreed with Turtle Wax's position that the Exclusive License Agreement was terminated, Argento requested that Turtle Wax purchase Argento's remaining inventory in stock or already in the manufacturing process (the "Remaining Inventory"), or Argento would sell same, as was the procedure contemplated by the Exclusive License Agreement in the event of a termination.

33. However, in further breach of the Exclusive License Agreement, Turtle Wax refused to purchase Argento's Remaining Inventory and barred Argento from selling same.

34. Accordingly, as a result of Defendants' ongoing breaches of the Exclusive License Agreement, misrepresentations and other misconduct, Argento has been and continues to be damaged by the sale of the Infringing Products.

**COUNT I**
**(Breach of Contract, including Breach of the Covenant of Good Faith and Fair Dealing, against Turtle Wax)**

35. Plaintiff re-alleges the allegations contained in paragraphs 1-34 of the complaint as if fully set forth herein.

36. Plaintiff and Turtle Wax entered into a valid, enforceable, and binding Exclusive License Agreement.

37. Plaintiff performed its obligations under the Exclusive License Agreement.

38. Turtle Wax materially breached the Exclusive License Agreement by the conduct more fully described above.

39. As set forth above, as a result of the willful and wanton nature of Turtle Wax's material breach of the Exclusive License Agreement, Plaintiff suffered and continues to suffer

damages in an amount to be proven at trial but in no event believed to be less than $2,000,000, plus attorneys' fees, costs, and expenses.

40. In addition, Plaintiff is entitled to an order permanently restraining Turtle Wax, and any of its representatives, licensees, affiliates, and/or agents from manufacturing, approving, and selling the Infringing Products in violation of the Exclusive License; and disgorging Turtle Wax's profits improperly earned from selling the Infringing Products.

41. Implied in every contract is a covenant of good faith and fair dealing, which imposed upon Turtle Wax a duty of good faith and fair dealing and which required that Turtle Wax not do anything to deprive Plaintiff of the benefit of their contracts, including the Exclusive License Agreement.

42. Turtle Wax breached the covenant of good faith and fair dealing by virtue of the conduct detailed more fully above including, *inter alia*, failing to enforce the Exclusive License Agreement and Turtle Wax's intellectual property rights against third parties whose conduct was in violation of the Exclusive License Agreement.

43. By Turtle Wax's failure to dutifully perform its obligations to Plaintiff as set forth more fully above, Turtle Wax has deprived Plaintiff of the benefit of and consideration for which Plaintiff bargained.

44. Turtle Wax's continuing breaches of its duty of good faith and fair dealing arising out of their contracts with Plaintiff have proximately caused and continue to proximately cause damage to Plaintiff, in an amount to be proven at trial but in no event believed to be less than $2,000,000, plus attorneys' fees, costs and expenses.

## COUNT II
### (Tortious Interference with Contract against Global)

45. Plaintiff re-alleges the allegations contained in paragraphs 1-34 of the complaint as if fully set forth herein.

46. The Exclusive License Agreement was a valid contract between Argento and Turtle Wax.

47. Global had actual knowledge of the Exclusive License Agreement, particularly given that Global was the agent that procured it on behalf of Turtle Wax and was the agent through which it would be effectuated.

48. As set forth more fully above, Global intentionally procured Turtle Wax's breaches of the Exclusive License Agreement without justification by, *inter alia*, finding third parties to manufacture and sell the Infringing Products in derogation of the Exclusive License Agreement, and then failing to, or failing to cause Turtle Wax to, take the proper action to stop the manufacture and sale of the Infringing Products.

49. As a result of the foregoing, Plaintiff suffered and continues to suffer damages in an amount of at least $2,000,000, plus attorneys' fees, costs, and expenses.

50. Based on the foregoing, Argento is entitled to an award of damages from Global in in an amount to be proven at trial but in no event believed to be less than $2,000,000, plus attorneys' fees, costs, and expenses.

## COUNT III
### (Negligence against Global)

51. Plaintiff re-alleges the allegations contained in paragraphs 1-34 of the complaint as if fully set forth herein.

52. Global owed a duty to Argento as the agent and brand manager for Turtle Wax who, under the Exclusive License Agreement, would be responsible for approving Argento's products and policing infringers of the Exclusive License Agreement.

53. Global breached that duty to Argento by permitting the Infringing Licensee(s) to manufacture, sell and continue manufacturing and selling the Infringing Products, even after Argento notified Defendants of the issue.

54. But for Global's conduct, Argento would not have been damaged.

55. Based on the foregoing, Argento is entitled to an award of damages from Global in in an amount to be proven at trial but in no event believed to be less than $2,000,000, plus attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff hereby requests that the Court grant the following relief:

i. An award of damages against Turtle Wax on Plaintiff's Count I in an amount to be proven at trial but in no event believed to be less than $2,000,000;

ii. An award of damages against Turtle Wax on Plaintiff's Count II in an amount to be proven at trial but in no event believed to be less than $2,000,000;

iii. An award of damages against Global on Plaintiff's Count III in an amount to be proven at trial but in no event believed to be less than $2,000,000;

iv. An order permanently restraining Defendants, their respective officers, agents, representatives, successors, assigns, affiliates, servants, employees, licensees, attorneys, and all those acting in concert or in participation with Defendants, from approving, manufacturing, and selling the Infringing Products;

v. An order disgorging Defendants' profits improperly earned from selling the Infringing Products;

vi. An award of Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action to the fullest extent permitted by law;

vii. An award of pre- and post-judgment interest; and

viii. Any and all other and further relief as the Court may deem just and proper.

By: _____
Darren Oved, Esq.
(darren@ovedlaw.com)
(*pro hac vice application forthcoming*)
Aaron J. Solomon, Esq.
(aaron@ovedlaw.com)
(*pro hac vice application forthcoming*)
Christopher J. Rados, Esq.
(crados@ovedlaw.com)
OVED & OVED LLP
*Attorneys for Plaintiff*
401 Greenwich Street
New York, New York 10013
Tel: ( 212) 226-2376

By: _____
James L. Wideikis
(jwideikis@cgw-legal.com)
ARDC # 6278707
Shawn M. Staples
(sstaples@cgw-legal.com)
ARDC # 6293863
COSTELLO, GINEX & WIDEIKIS, P.C.
*Attorneys and Local Counsel for Plaintiff*
150 N. Wacker Drive, Suite 1400
Chicago, Illinois 60606
Phone: (312) 850-2651
Fax: (312) 893-7395