UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARGENTO SC BY SICURA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 22 C 112 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TURTLE WAX, INC., and GLOBAL ICONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Argento SC by Sicura, Inc., brings this diversity suit against Turtle Wax, Inc., alleging breach of an exclusive licensing agreement, and Global Icons, LLC, alleging tortious interference with that agreement and negligence. Doc. 1. Turtle Wax answered the complaint. Doc. 22. Global Icons moves under Civil Rule 12(b)(6) to dismiss the claims against it. Doc. 23. The motion is granted, though Argento will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Argento's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Argento as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the

1

facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Turtle Wax, a car care brand, licenses its trademarks to entities that design, manufacture, and sell Turtle Wax-branded products. Doc. 1 at ¶¶ 6, 8. Global Icons is Turtle Wax's trademark licensing agent. *Id*. at ¶ 9. In November 2018, Turtle Wax granted Argento an exclusive license to use its trademarks for certain products in certain regions. *Id*. at ¶¶ 10-13. Turtle Wax breached the exclusive license by allowing another entity to manufacture competing products in those regions. *Id*. at ¶ 15.

Global Icons determined that human error and Turtle Wax's unsophisticated product approval system led to Turtle Wax's approval of the infringing products. *Id*. at ¶ 18. Global Icons assured Argento that no additional infringing products would be approved and that, if any such products were marketed, sold, or shipped, Turtle Wax would send a breach letter immediately to the infringing manufacturer. *Id*. at ¶¶ 21-22. Despite those assurances, Argento discovered ongoing sales of infringing products two years later. *Id*. at ¶¶ 25-26.

## Discussion

As noted, Argento asserts common law tort claims against Global Icons for tortious interference with the exclusive license agreement and for negligence. Doc. 1 at ¶¶ 45-55.

**I.      Tortious Interference with Contract Claim**

"To state a claim for tortious interference with contract, a plaintiff must allege facts sufficient to establish: (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). Global Icons argues that the complaint fails to allege that its conduct was "unjustified." Doc. 23 at 11-13; Doc. 49 at 6-8.

2

As Turtle Wax's agent, Global Icons enjoys a conditional privilege against claims of tortious interference with its principal's contracts. *See George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1333 (7th Cir. 1983) (holding that Illinois law offers "broad protection for agents with regard to their principals' contracts and business relationships"); *Bosch v. NorthShore Univ. Health Sys.*, 155 N.E.3d 486, 507 (Ill. App. 2019) ("A party cannot tortiously interfere with its own contract. This rule extends to agents, though an agent's privilege from liability is not absolute.") (citation omitted); *Citylink Grp., Ltd. v. Hyatt Corp.*, 729 N.E.2d 869, 877 (Ill. App. 2000) ("Corporate officers, directors, shareholders and agents are normally privileged against claims that their activities interfered in a third party's relationships with their principals."). "To overcome the privilege, plaintiffs must allege … that a defendant acted in its own interests and contrary to the interests of its principal, or engage[d] in conduct totally unrelated or antagonistic to the interest giving rise to the privilege." *Citylink*, 729 N.E.2d at 877; *see also Waldinger Corp. v. CRS Grp. Eng'rs, Inc.*, 775 F.2d 781, 790 (7th Cir. 1985) (holding that the conditional privilege may be overcome if the agent's "acts were not taken to further its principal's best interests, but to further its personal goals or to injure the other party to the contract").

Argento contends that the conditional privilege is an affirmative defense that its complaint need not address. Doc. 45 at 13-15. True enough, "complaints need not anticipate or attempt to plead around potential [affirmative] defenses." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 482 (7th Cir. 2019). But the Supreme Court of Illinois has held that the absence of privilege is not an affirmative defense, but rather an essential component of the "unjustified" element of a tortious interference claim. *See Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991) ("[I]t is plaintiff's burden to plead, as part of his *prima facie* case,

that the defendant's actions were 'unjustified or malicious.'"); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989) ("[W]here the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious."). Although one Appellate Court of Illinois decision appears to deviate from that understanding, *see Roy v. Coyne*, 630 N.E.2d 1024, 1032-33 (Ill. App. 1994), *Fellhauer* and *HPI* remain controlling absent a clear sign that the Supreme Court of Illinois itself has changed Illinois law. *See KR Enters., Inc. v. Zerteck Inc.*, 999 F.3d 1044, 1051 (7th Cir. 2021) ("[W]here one decision by an intermediate court seems to stray from the established course of the state's law, especially as written by the state supreme court, we need not follow it."). Thus, to state a claim that Global Icons tortiously interfered with Argent's contract with Turtle Wax, Argento must plead facts supporting an inference that the conditional privilege does not apply.

Argento argues that it meets that burden by alleging that Global Icons's actions were "intentional, unjustified, and in derogation of the [exclusive license agreement]." Doc. 45 at 15; *see* Doc. 1 at ¶ 48 ("Global [Icons] intentionally procured Turtle Wax's breaches … without justification … ."). But the complaint's allegation that Global Icons acted "without justification" is a legal conclusion not entitled to the assumption of truth on a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). More to the point, the complaint does not allege that Global Icons "acted in its own interest and contrary to the interests of its principal, or engage[d] in conduct totally unrelated or antagonistic to the interest giving rise to the privilege." *Bosch*, 155 N.E.3d at 507 (alteration in original) (quoting *Citylink*, 729 N.E.2d at 877). Absent such an allegation, Argento does not overcome the

4

conditional privilege, requiring dismissal of its tortious interference claim. *See Waldinger Corp.*, 775 F.2d at 790 (holding that the plaintiff "must allege and prove" facts negating the conditional privilege); *Fuller*, 719 F.2d at 1334 (holding that where "there is no allegation that [the agent] acted contrary to [the principal's] best interests … no cause of action is stated").

Because Argento's failure to overcome the conditional privilege provides sufficient grounds for dismissal, the court need not address Global Icons's argument, Doc. 23 at 13-14, that Argento does not adequately allege that Global Icons intended to induce Turtle Wax's breach. *Compare* Doc. 1 at ¶ 48 ("Global [Icons] intentionally procured Turtle Wax's breaches … by, *inter alia*, finding third parties to manufacture and sell the Infringing Products in derogation of the Exclusive License Agreement, and then failing to, or failing to cause Turtle Wax to, take the proper action to stop the manufacture and sale of the Infringing Products."), *with Webb*, 906 F.3d at 579 ("Intent to induce [a breach of contract] requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way.") (internal quotation marks omitted).

**II.     Negligence Claim**

Argento's second claim against Global Icons, for negligently "approving [Turtle Wax's] products and policing infringers of the Exclusive Licensing Agreement," Doc. 1 at ¶ 52, is barred by the economic loss doctrine, also known in Illinois as the *Moorman* doctrine. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982). The *Moorman* doctrine ordinarily prohibits "su[ing] in tort to recover for solely economic loss without any personal injury or property damage." *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1054 (Ill. 2020).

Argento argues that the economic loss doctrine serves only to "limit[] the claims of parties who allege breach of contract to contractual remedies, rather than tort remedies." Doc. 45 at 17. That may be the doctrine's paradigmatic application, *see Wigod v. Wells Fargo Bank,*

5

*N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) ("[T]he key question is whether the defendant's duty arose by operation of contract or existed independent of the contract."), but *Moorman* applies even absent a contractual relationship between the parties. *See Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (holding that the economic loss doctrine applied, even though "there [was] no direct contract between these parties"); *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) ("Recovery in tort for disappointed commercial expectations due to breach of implied duties and warranties between non-contracting parties is also barred by the economic loss doctrine."). As relevant here, the doctrine applies where plaintiffs "seek to correct the purely economic 'defeated expectations of a commercial bargain.'" *Cmty. Bank of Trenton*, 887 F.3d at 817 (quoting *2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 350 (Ill. 1990)).

Argento's complaint does not allege any personal or property damage and seeks only economic damages. Doc. 1 at ¶¶ 53-54; Doc. 45 at 17-18 (not disputing that Argento's alleged damages are purely economic). Thus, the economic loss doctrine applies to and bars Argento's negligence claim. *See Lewis*, 178 N.E.3d at 1054 ("This obviously is a case involving only economic loss, as plaintiffs do not allege any physical injury or property damage … ."); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1143 (Ill. 2004) (holding that the *Moorman* doctrine applies, even absent a contractual relationship, where "the damages sought by the plaintiffs are 'solely economic damages' in the sense that they represent costs incurred in the absence of harm to a plaintiff's person or property").

Argento's negligence claim does not fit within the *Moorman* doctrine's recognized exception for fraud. The complaint does not allege that Global Icons made *intentional* misrepresentations, Doc. 1 at ¶¶ 34, 51-55, and the fraud exception does not encompass claims

for *negligent* misrepresentation. *See Wigod*, 673 F.3d at 574 n.12 ("[T]he *Moorman* doctrine admits an exception for claims alleging fraud. This exception saves the fraudulent concealment claim but not the negligent misrepresentation … claim."). And Argento expressly waives any reliance on a second, narrower *Moorman* exception encompassing negligent misrepresentation claims brought against information-supplying businesses. Doc. 45 at 18 n.10 ("[T]he so-called 'negligent misrepresentation' exception to the *Moorman* doctrine … is not at issue here."); *see First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 336 (Ill. 2006) (holding that the "the negligent misrepresentation exception to the *Moorman* doctrine does not apply" if the defendant "is not in the business of supplying information").

Invoking the principle that a tort claim alleging a breach of an "independent" duty is not subject to the *Moorman* doctrine, Argento contends that Global Icons assumed such an independent duty by "affirmatively represent[ing] to Argento in May 2019 that it would take steps to prevent any further sales and distribution of the Infringing Products." Doc. 45 at 16. That alleged duty, however, "has its root" in the exclusive license agreement between Argento and Turtle Wax, which means that any tort arising from a breach of that duty is not excepted from the *Moorman* doctrine. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (holding that a negligence claim was barred by the *Moorman* doctrine because "each duty that the plaintiffs identify," including those purportedly derived "from common law," "has its root in the … contract itself").

Through the exclusive license agreement, Turtle Wax assumed contractual duties to not license certain products that competed with Argento's. Doc. 1 at ¶ 11. Global Icons is not a "direct part[y]" to the agreement, but with its negligence claim, Argento seeks from Global Icons "additional recovery for [Turtle Wax's] breach of those contractual duties." *Cmty. Bank of*

7

*Trenton*, 887 F.3d at 817. The claim's gravamen is that Global Icons negligently performed its trademark management responsibilities "as the agent and brand manager for Turtle Wax," Doc. 1 at ¶ 52, which means that Global Icons made its alleged representations in carrying out Turtle Wax's contractual obligations to Argento, *id*. at ¶¶ 21-22, 52-53. Accordingly, Global Icons's alleged "responsib[ility] for approving Argento's products and policing infringers" arose from the exclusive license agreement. *Id*. at ¶¶ 52-53. Because Global Icons's alleged duty to Argento is not independent from Argento's commercial and contractual relationship with Turtle Wax, the economic loss doctrine bars Argento's negligence claim. *See Wigod*, 673 F.3d at 574 (holding that the *Moorman* doctrine barred a claim premised on an alleged duty "to provide accurate information," because that duty was not "owed to the general public" and instead "arose directly from [the parties'] commercial and contractual relationship").

## Conclusion

Global Icons's motion to dismiss is granted. Argento's claims against Global Icons are dismissed. Although Argento may be unable to satisfactorily replead its claims, the court will err on the side of caution and dismiss the claims without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Argento has until July 19, 2022 to file an amended complaint. If Argento does not file an amended complaint, the dismissal of its claims against Global Icons will convert automatically to a dismissal with prejudice.

June 28, 2022

_____
United States District Judge

8